in Sony Computer Entertainment America, 2012-13-87. And we'll hear from Mr. Merker when he's ready. Thank you, Your Honor. May it please the Court, I'm Steve Merker for the Plaintiff Appellant. In this case, the District Court ruled on summary judgment that NVIDIA's graphics processing units, GPUs, and the GPU incorporated into the Sony PlayStation, didn't infringe BIAX's patents. And it based that ruling on two fundamental errors. Number one, we had presented evidence that the individual building blocks that went into these GPUs, each of them were identical, and each of them infringed BIAX's patents. Nevertheless, the District Court held that when these individually infringing building blocks were incorporated into a GPU, infringement no longer existed. That was point number one. Number two, in order to get to its holding of non-infringement, what the District Court did was to import into each of the asserted claims a shared-by-all processor elements limitation that was not incorporated into the claims, that wasn't in the claim language. And it incorporated that limitation into many of the claims that didn't even recite a requirement that there be processor elements. That's all over the specification, isn't it? Under the teachings of the present invention, these processor element can be totally coupled to any shared register. And you have diagrams here which seem to indicate that. We do, Your Honor. There are many references in the specification to shared-by-processor elements. But there are also references in the specification to another embodiment, and that embodiment involves one processor element and multiple addressable condition code registers. Specifically, there is... Well, the sharing issue doesn't come up if there's a single processor, right? Exactly right. Exactly right. So what do you get from that? Well, what we get from that is, for example, Claim 1 of the 628, which calls for a processor element and multiple addressable condition code registers. It allows for the possibility of one processor element. And to import into that claim a limitation shared by all processor elements just doesn't make any sense under the circumstances. Correct, but so what? Well, because... and what we did was when we... It doesn't seem to me to bear on the question of whether when you have more than one processor, there has to be a sharing of all elements. But what we have in the specification, Your Honor, is we have a description of two embodiments. We have a description of an embodiment that has multiple processors and multiple addressable condition code registers. And we also have a description in the specification of an embodiment that has processor elements that doesn't require sharing. For example, there is a reference to the present invention as incorporating into it an SISD, single instruction, single data embodiment. And what that means is that you can have an embodiment that requires only multiple addressable condition code registers. And that's supported by the abstract of the 628 patent. The abstract talks about an embodiment that needs multiple addressable condition code registers, but says nothing at all about sharing. And the abstract, as this Court has recognized in, for example, the Tate access flooring case, the abstract can be important in determining whether or not you have that kind of embodiment in your claimed invention. So can the prosecution. I see in the prosecution a distinction over the tridentic reference, and then a statement, in contrast, the present application teaches that all data and storage is shared by all processors. It does, Your Honor. But it's important to look at that response to the office action in context. That response to an office action was in response to the PTO's saying several things. Number one, the PTO in its February 1995 office action said, give me a title that more clearly reflects the claimed invention. Modify your specifications so that it more clearly describes the claimed invention. And we're rejecting all of the claims on the basis of tridentic in view of Gilliland. And what BIACS did in response to that office action was to do three things. Number one, it modified the title and the title reflects multiple addressable condition code registers with no requirement of sharing. Number two, it added the abstract. It redrafted the abstract. The abstract also describes the invention as not requiring sharing. Rather, it is multiple addressable condition code registers. And the third thing that BIACS did was to distinguish tridentic in Gilliland. When it distinguished tridentic, tridentic was included because it had a single processor, a single condition code register, and no sharing. And what BIACS said was it distinguished tridentic on three bases. It had multiple processors. It had multiple addressable condition code registers. And it had sharing. And so there are three separate and distinct ways in which BIACS... Well, that's true unless it's like the Golight case where you can identify particular claims as to which those grounds apply. And in this case, what happened was when it distinguished on that basis, it also summed up and said, the way we are distinguishing our invention from the prior art is that the prior art did not have multiple addressable condition code registers. It said nothing about sharing in its summing up of how it was distinguishing these things. And it also left unamended the claims that did not require sharing. And so if you look at the bases on which it distinguished tridentic in Gilliland and match it up with the claims, you can do that because you have some bases that required sharing. Those are like Claim 2 of the 628 that require sharing. Others are distinguished on the basis that the prior art references did not have multiple addressable condition code registers. Neither tridentic nor Gilliland had those. And that matches up with Claim 1 of the 628 and all of the other claims that don't require sharing. So to import a limitation that says that it must be shared by all processor elements is contrary to the idea of the Golight case, which is to say when you distinguish on multiple bases and you can match those multiple bases with the multiple claims that remain in the application, that that's what you should do to avoid, because that's a reasonable interpretation of the statements that the patentee made in the prosecution history. And if that is one of several reasonable interpretations, then there's no clear and unequivocal disclaimer. And that's what we have here. We have a couple of reasonable interpretations for those statements, and so we're suggesting that there is no clear and unequivocal disclaimer that would result in the importation of that limitation into the 628 patent. There's another issue here, too, and that is even if you do import that limitation into the claims of the 628 patent, it makes no sense to import those same limitations into the claims of the 313 patent. Well, except that you said the same thing to the examiner about the 313 patent, for example, on 1095. Well, what we said with respect to the 313 patent... The McAlexander, I think, the McAlexander declaration is the one you're referring to, Your Honor? In paragraph 12. In paragraph 12, we talk about that as... we talk about sharing in that context. That was in the re-exam history, I believe. But what we also say is in paragraph 11, the invention disclosed and claimed in the 313 patent met this long-felt need by providing multiple addressable condition code registers. And so in paragraph 12, we're talking about meeting a long-felt need with multiple addressable condition code registers. Yeah, but it doesn't say no sharing. 12 says it shares. Well, what we're saying, Your Honor, is that the specification and the claims describe an embodiment, the key feature of which is multiple addressable condition code registers. And sharing is not required in that embodiment. All that is required is processor element, multiple addressable condition code registers. And the specification talks about why that's so, because it eliminates the operational dependencies that occur when you only have one condition code register. These patents have the same specifications, right? They do. One's a division of the other. Yes, that's right, Your Honor. But the 313, none of the asserted claims talk about processor elements. They talk about a first circuit, and the district court construed a first circuit as being different from a processor element. And in fact, in our infringement contentions, the circuits that we identified with respect to the first circuit were different from the circuits that we identified with respect to the processor element for claim 628. They overlapped, but they were different. And so because a first circuit is different from a processor element, even if there is a disclaimer in the 628, you can't extend that to the 313 because the use of the term processor element in the 313 would make no sense. Those claims don't contain any requirement of a processor element. And one last thing about the McAlexander Declaration, Your Honor, is that that was not made in the context of distinguishing prior art. That was simply describing two facets of how this invention met long-felt needs. One was the sharing concept. The other was the multiple addressable condition code registers, independent of the sharing. Do you want to save your rebuttal time? I would. Thank you, Your Honor. Mr. Davies, you are for Olivia. Yes, Your Honor. And you're going to take 11 minutes and leave four for Mr. Rokach. That's the plan, but I'm here to answer your questions, Your Honor. Why don't we, may I please report? Perhaps we should start with the prosecution history that Your Honors were asking about. It's at 952 and 953 of the appendix. And it really couldn't be clearer that the prior art that they were distinguishing involved a dedicated processor, a dedicated processor with multiple condition code registers. But their invention was not that. It was the opposite of that. It is separate condition, it is 952, all data and status storage is shared by all processors. That's in 952. In 953, it says total sharing of status storage, condition code registers are by all processor elements. And the phrase that I wanted to bring to Your Honor's attention, because I have not seen as clear a phrase as this in all the cases that we've looked at, and this is at 953, they go to Forrest to say, not only is there no overlapping concepts between the two pens, but each one teaches that its concepts preclude the need for the other's concepts and puts an exclamation point in the text. It's impossible to imagine a prosecution history that is clearer about what came before and what came after. What came before is the prior art and that's what we have, which is a single processor system with multiple condition code registers. What came after, what they were proud of, was not that. It was a shared system. But we don't even have to rely on the prosecution history. We can talk about the specifications. Six times, Judge Lowry, this is where you started, six times in the specification they used the phrase the present invention. And it's not a question of multiple embodiments as we just heard. The present invention is described as the processor system that I was discussing. So we can go to column 14 or column 15 or column 16, column 25 or column 27. Just to pick one at random, column 25, the register sets and the different levels constitute a shared resource of the present invention. Column 27, as shown in figure 6, the TDA system 600 of the present invention. And that's six of them. But it's even more than that, Your Honor, because if you go to the original specification, the one that they started with, that according to the other side has no material changes, if you go back to that, there's 13 instances of using the phrase present invention to describe their invention, which is not ours, to describe this shared access system, which is not what we have. So it's throughout the specification and it's throughout the prosecution history. And this court, on far less clear evidence in Honeywell, in Verizon, in Microsoft, in Rembrandt, has read the record as we do. So it's just not that complicated a case. And I know it's been a long morning, Your Honor. I'm happy to answer questions if there are any. So in Claim 1, it discloses a word processor. How does sharing apply to that claim? So that's a great question, Your Honor. The Claim 1... All questions from the bench are great questions. Absolutely, Your Honor. So Claim 1, you don't see the word sharing in it. I mean, that is absolutely true. But it is throughout the entire specification. And so the doctrinal question is what to do about that. And where you have what we think the right answer is, is conditioned code register, as used in the context of this claim, has to be the type of conditioned code register that can be accessed by any processor in the system. Why didn't you answer the question that Claim 1 is dealing with a single processor in which sharing isn't an issue? I know the district court construed Claim 1 as applying to multiple processors, but in the light of Claim 2, which seems to bring in the element of an additional processor, it might be argued that Claim 1 is limited to a single processor in which event sharing doesn't matter. That's our second answer, Your Honor. That is not at all inconsistent with what's been said before. Exactly. Our system doesn't have this. Their system doesn't have the multiprocessor system. If you have nothing further to say, we'll hear from Mr. Rokach. I mean... No questions. Thank you. And since Mr. Davies didn't use up all of his time, if you want to exceed four minutes, feel free. Thank you, Your Honor. May it please the Court, David Rokach on behalf of the Sony's Parties, I will address the district court's dismissal of Biax's accusation against Sony Games. After finding non-infringement of the terms Condition Code Register and Conditioned Storage, the district court dismissed the entirety of Biax's accusations, including accusations that running Sony Games infringes the method claims. That ruling was correct because the same issues of claim construction and non-infringement apply across the board. With respect to claim construction, the relevant construed terms, Condition Code Register and Conditioned Storage, appear in all asserted claims. We begin with this court's presumption that therefore those terms have the same meaning in all claims, and that presumption is reinforced by the intrinsic record in this case, for example, the prosecution history. With respect to non-infringement, once again, we're looking at the same issues. We have the same components accused under the apparatus claims, as well as under the method claims, for meeting the Condition Code Register and Conditioned Storage limitations. So it's, once again, exactly the same question. Returning to the prosecution history, I'd like to note that there's really no need to look any farther than the prosecution history to reject each of the arguments that Biax is making to this court. As Mr. Davies noted, the prosecution history begins with a rejection of all claims of the 628 patent. That includes the method claims, that includes Claim 1 that the court asked about, rejection of all claims under the Tridenic and Gilliland references. In response to that rejection, Biax argued that the prior arts involved a system that lacked shared access, and in contrast, its present invention required shared access. In making that distinction, Biax argued that the present application, in its most general configuration, teaches that all data and status storage is shared by all processors, and that's on A952. The argument was made that that distinction was directed only at certain embodiments and certain claims, but that's the opposite of what Biax told the Patent Office. The opposite of specific embodiment is most general configuration. In other words, the broadest possible configuration of the invention. And that's what Biax... So what does that do to Claim 1? That means that this disclaimer applies to Claim 1 as well, and I think the district court was actually very careful to adopt language that read on Claim 1 as well. So you think the prosecution history completely disclaimed Claim 1? Well, let me explain how it applies to Claim 1. And this is something the district court explained at 837. The language the district court adopted for its construction is that any condition code register is accessible by any processor. And the district court explained that that would be satisfied by a single processor system such as Claim 1. It is, in fact, the case that any processor... It would also satisfy a single processor with multiple processors as opposed to... That's absolutely right, Your Honor. That same construction would apply to a multiple processor configuration in all circumstances. The key point is that the condition code registers must be accessible to all processors, all four circuits. That's what Biax unequivocally told the Patent Office, and that's what the district court correctly held is required by the claims. And I'd like to make one more point as my time expires. Biax also knows an additional argument, that it's possible to disregard the additional processors in the accused products and pretend that they're not there for the purpose of satisfying the court's construction. That's not only contrary to this court's precedent, as we pointed out in the brief, but it's also contrary to the disclaimer in the prosecution. This is again on A952. Biax argued that the Tridentic reference involved any combination of multiple processors involved separate condition code storage dedicated to each processor. That's the prior art that Biax said is different. Multiple processors with dedicated condition code registers. If we were to disregard any condition code registers and any processors that are not sharing, as Biax seeks to do on the infringement side, that would erase the distinction of the prior art that Biax made during prosecution and bring that disclaimed prior art right back into the scope of the claims. And that's yet another reason why Biax cannot take that position on infringement. And the unambiguous disclaimer in the prosecution history absolutely requires the district court's holding, both with respect to claim construction as well as with respect to non-infringement. And just to note one additional point, which I believe Mr. Davies made and I'd like to amplify, as we discuss the prosecution history and ask ourselves, in this context, does it make sense to say that Biax's disclaimer was directed only at certain claims, in particular three out of 30 claims, which are identified nowhere in the prosecution history, we have not only Biax's unequivocal statement that this disclaimer was directed at the most general configuration, we also have... Explain to me where the prosecution history addresses the single processor systems under Claim 1. So, Your Honor, the prosecution history does not separately call that out, and that's because the prosecution history speaks generally about the invention as a whole. The arguments made in the prosecution history are not broken down... So is that a complete disclaimer if it addresses that in a general fashion? Absolutely, Your Honor. Well, it doesn't make any sense to have sharing when there's only one processor. That's correct, Your Honor, and the district court... So, you know, to the extent that there are claims here that only have one processor, the whole sharing requirement's not irrelevant, right? Well, the district court, Your Honor, I believe was careful to address that. The district court adopted language requiring... I think the answer, yes, if there's just one processor, the idea that it's shared by all processors doesn't make any sense. I would say, yes, it's trivially satisfied. And to conclude, Biax also argued that there is no overlapping concept between the two patents, i.e. the invention and the prior art. In other words, there are no claims in its patent which overlap with the dedicated access configuration of the prior art. No overlap at all. The invention in its entirety is distinct from the prior art. We therefore ask that the judgment of this report be affirmed in its entirety. Thank you, Mr. Rocat. Mr. Murka has about four minutes of rebuttal time. Thank you, Your Honor. Just a couple of points. First of all, the specification talks about the present invention in two contexts. Number one, it talks about the present invention as having multiple processors in sharing, but it also talks about the present invention being an SISD embodiment. An SISD embodiment can have only one processor, and the concept of sharing simply makes no sense with respect to that embodiment. And as Your Honor pointed out, the definition of condition code register as bearing the definition of shared by all processor elements, it just doesn't make sense in that context. Because if you have one processor to define condition code registers as being shared by all processor elements, that's a definition that term will not bear. So how does that help you? What we're concerned with is whether there's infringement where there are multiple processors, and do they have to share when there are multiple processors. The prosecution history seems to say, yes, if there are multiple processors, you have to share. But the prosecution history also suggests that one way of distinguishing Tridenic and Gilliland was the fact that it had multiple addressable condition code registers, and so that's why Claim 1 of the 628 says, I've got a processor element, I've got condition code registers, that's enough for infringement. And if I add a second processor in that, the SunTiger case and the SanDisk case both say, you can add a second processor element even if there's no sharing, even if that processor does something else someplace else. It still infringes Claim 1 of the 628 because you have a processor element that's hooked to multiple addressable condition code registers. So that's what we're talking about here, and that's what we showed to the district court as to why each of those building blocks individually infringed BiAXIS patents. Each of the building blocks individually had a processor element and multiple addressable condition code registers. And just the fact of hooking two identical building blocks together didn't negate infringement under both SanDisk and, excuse me, under SanDisk and under the SunTiger case. So that's what we're dealing with here, and that's why it makes a difference, because if you have any requirement that every time you add a second processor, no matter where you add it, you've negated infringement. That simply doesn't make sense in the context of cases like the SanDisk case. And so it does make a difference, Your Honor, and that's why Claim 1 is important because if you look at the condition code register, the definition of condition code register doesn't make sense in the context of that claim to add this shared by all processor elements to it. So we think it was a mistake for the district court not only to read that limitation into it, but then to take the claim as modified and apply it to the GPU as a whole when what we were saying was each of the individual building blocks of the GPU separately infringes. Each meets every limitation of Claim 1 and Claim 2 of the 628, Claim 3 of the 313, even with that shared by all processor elements limitation in it. And that's why there was infringement, and we think that's why the district court erred when it decided to ignore what we said were the infringing devices and say, no, you have to look at the GPU as a whole. And because a processor element in one part of the GPU didn't access condition code registers in another part, there was no infringement. And lastly, Your Honor, with respect to the Sony games, the district court simply never addressed that, never addressed it. There was nothing in the opinion. There was nothing anywhere. And in fact, there was no motion by Sony to dismiss the claims with respect to all of Sony's games. You can read their summary judgment motion front to back. The only thing they moved was with respect to whether or not games besides three specific games that we had identified infringed. Thank you, Mr. Merkel. We will take the case on revisement.